Todd Blanche
Deputy Attorney General of the United States
Brandon Pang
Assistant United States Attorney
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 2 4 2026

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

HECTOR DAVID FLORES,

                    Defendant.

Case No.: 4:25-CR-6032-MKD

Plea Agreement

Plaintiff United States of America, by and through Brandon Pang, Assistant United States Attorney for the Eastern District of Washington, and Defendant Hector David Flores ("Defendant"), both individually and by and through Defendant's counsel, Nick Mirr, agree to the following Plea Agreement.

1.    Guilty Pleas and Maximum Statutory Penalties

Defendant agrees to enter pleas of guilty to Counts 1, 2, and 5 of the Indictment filed on September 17, 2025, charging Defendant with Carjacking, in violation of 18 U.S.C. § 2119(1) (Count 1) a Class C Felony; Brandishing a Firearm in Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2) a Class A Felony; and Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Count 5), a Class C felony.

Defendant understands the following potential penalties apply to Counts 1 and 5:

PLEA AGREEMENT - 1

a.   a term of imprisonment of not more than 15 years;

b.   a term of supervised release of not more than 3 years;

c.   a fine of up to $250,000; and

d.   a $100 special penalty assessment.

Defendant understands the following potential penalties apply to Count 2:

a.   a term of imprisonment of not less than 7 years and up to life, to run consecutive to any sentence imposed for the related crime of violence;

b.   a term of supervised release of not more than 5 years;

c.   a fine of up to $250,000; and

d.   a $100 special penalty assessment.

Defendant understands that pursuant to 18 U.S.C. § 3548, the Court has the discretion to impose sentences for different crimes concurrently or consecutively, except where a consecutive sentence is mandated by statute. Defendant understands that the Court must impose a custodial sentence of no less than 7 years on Count 2, which must run consecutive to any time the Court imposes on Count 1.

2.   Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.   5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.   3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

PLEA AGREEMENT - 2

c.      2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.      The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.      the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.      the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.      Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

PLEA AGREEMENT - 3

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    Waiver of Constitutional Rights

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a. the right to a jury trial;

b. the right to see, hear and question the witnesses;

c. the right to remain silent at trial;

d. the right to testify at trial; and

e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

PLEA AGREEMENT - 4

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    Elements of the Offense

The United States and Defendant agree that to convict Defendant of Carjacking, in violation of 18 U.S.C. § 2119(1) (Count 1), the United States would have to prove the following beyond a reasonable doubt:

> *First*, on or about June 10, 2025, within the Eastern District of Washington, Defendant intentionally took a motor vehicle from the person or presence of another;
>
> *Second*, the Defendant did so by means of force or violence;
>
> *Third*, the vehicle had been transported in interstate or foreign commerce; and
>
> *Fourth*, at or during the time the Defendant took the motor vehicle, he intended to cause death or serious bodily injury.

The United States and Defendant agree that to convict Defendant of Brandishing a Firearm in Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2), the United States would have to prove the following beyond a reasonable doubt:

> *First*, on or about June 10, 2025, within the Eastern District of Washington, Defendant committed the crime of Carjacking, a crime of violence, as charged in Count 1 of the Indictment;
>
> *Second*, the Defendant knowingly brandished a firearm, to wit: a Ruger, SR1911, .45 caliber handgun, bearing serial number 673-95042; and
>
> *Third*, the Defendant brandished said firearm during and in relation to the crime of Carjacking.

PLEA AGREEMENT - 5

The United States and Defendant agree that to convict Defendant of Felon in Possession of Firearms, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8) (Count 5), the United States would have to prove the following beyond a reasonable doubt:

> *First*, on or about June 10, 2025, within the Eastern District of Washington, Defendant knowingly possessed firearms as outlined in Count 5 of the Indictment;

> *Second*, the firearms had been shipped from one state to another or between a foreign nation and the United States;

> *Third*, at the time Defendant possessed the firearms, Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

> *Fourth,* at the time Defendant possessed the firearms, Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

7.   Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On June 10, 2025, Benton County Sheriffs Pro-Act Detectives were around Tanglewood Drive and Duportail St. in Richland, Washington, and saw a black Chevrolet Malibu pass by northbound. A detective was able to ID the driver as Defendant, Hector FLORES. The detective knew Defendant had a confirmed

PLEA AGREEMENT - 6

warrant, and an active felony hold regarding an incident which had occurred just a few days prior.

After spotting Defendant, detectives set up containment spikes at the intersection of Tanglewood Drive and Duportail Street and additional law enforcement units responded to the area. Defendant attempted to flee southbound on Tanglewood and stuck the spikes, deflating his vehicle's front tires. Despite this, Defendant continued at a high rate of speed westbound on Duportail Street. Detectives lost sight of Defendant's vehicle.

A few minutes later, dispatch advised that a reporting party had called in stating the suspect vehicle had been dumped in the (nearby) Hills Mobile Home Park located at 250 Skyline Drive in Richland. Multiple units responded to the area. Upon arriving, an officer observed Defendant as the front passenger inside a Toyota Tundra pickup and attempted to initiate a traffic stop on the vehicle. The vehicle came to a stop, and a male driver exited the vehicle frantically yelling, "He has a gun!". Defendant then slid to the driver's seat and fled at a high rate of speed in the Toyota and officers initiated another pursuit.

While units were pursuing, the male driver was identified by other officers as J.B. He stated that a Hispanic male matching Defendant's description, carrying a black backpack, approached him on Skyline Drive on foot while he (J.B.) was in his yard. J.B. reported that the male, who was later identified as Defendant, stated he had "gotten into a fight with his girlfriend and needed a ride out of the area to Pasco". J.B. agreed and got into the driver's seat of his work truck, a 2005 Toyota Tundra, which was manufactured outside the state of Washington, and Defendant got in the passenger seat. As they were leaving northbound on Skyline, they saw two police vehicles entering the area, one unmarked and one fully marked. Defendant instructed J.B. to "go, go, go" to which J.B. replied, "I am not running from the cops man". J.B. said Defendant then reached into his black backpack and pulled out a "silver handgun possibly a .40 or .45" in his right hand and turned it to

PLEA AGREEMENT - 7

point it at J.B. Out of fear, J.B. reached out and grabbed Defendant by the right arm, pushing the gun away from him (J.B.). During the struggle J.B. was able to bring the truck to a stop, jump out, and begin yelling at police that Defendant had a gun.

The subsequent pursuit reached speeds of approximately 90 mph and included instances of Defendant driving into oncoming traffic. The pursuit was concluded only after officers were authorized to use a PIT (pursuit intervention technique) maneuver. Defendant was taken into custody. Defendant told officers there were 3 guns in the car. Defendant also made requests for officers to retrieve his wallet from inside the Toyota, which he claimed contained approximately $1,000. A silver handgun was clearly visible on the front passenger seat of the Toyota.

A search warrant for Toyota was obtained. Inside, investigators located:

- a silver and black Ruger .45 caliber handgun SN# 673-95042 with one .45 caliber round in the chamber and an inserted magazine with four .45 caliber rounds (confirmed stolen out of Moscow, ID); and
- Two black bags belonging to Defendant, which contained:
  - a Smith and Wesson revolver 38 special SN#BMA2649 with five rounds in the wheel one of which was spent (fired);
  - a Highpoint C9 handgun SN# P1891188 with two magazines one of which was loaded with ten 9mm rounds the other with nine 9mm rounds;
  - two small scales;
  - a brown leather wallet with $1,190 dollars cash and a WA state driver's license for Defendant;
  - a lanyard with a key fob that operated the Chevy Malibu;
  - multiple small clear plastic baggies containing a white crystalline substance (suspected methamphetamine);

PLEA AGREEMENT - 8

        o  small rounds blue pills (suspected fentanyl); and

        o  a white powder (suspected powdered fentanyl).

The seized drug evidence was sent to the Drug Enforcement Administration Laboratory for further analysis, which revealed there to be approximately 32.27 grams of pure (actual) methamphetamine, and approximately 62.3 grams of fentanyl, between the various baggies recovered from Defendant.

Prior to June 10, 2025, Defendant had been convicted of multiple felonies that were punishable by imprisonment of greater than one year, and Defendant knew the same. Additionally, an interstate nexus analysis of the three handguns found in Defendant's possession was conducted and it was determined the three handguns were manufactured outside of Washington, and therefore their presence in Washington would have affected interstate or foreign commerce.

8.    The United States' Agreements

a.    *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

b.    *Dismissal of Counts*:

The United States agrees to dismiss Counts 3 and 4 of the Indictment at the time of sentencing, provided Defendant does not breach the Plea Agreement.

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

PLEA AGREEMENT - 9

a. *Count 1 – Carjacking*

    i. Base Offense Level:

The parties agree that the base offense level is 20. *See* USSG §2B3.1(a).

    ii. Specific Offense Characteristics[1]:

The United States and Defendant agree to a 2-level increase as the offense involved carjacking. *See* USSG §2B3.1(b)(5).

    iii. Other Adjustments:

The United States and Defendant agree to a 2-level increase as Defendant recklessly created a substantial risk of death or serious bodily injury to another during flight. *See* USSG §3C1.2.

    iv. Role Adjustments:

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §§3B1.1; 3B1.2.

b. *Count 2 – Brandishing a Firearm in Commission of a Crime of Violence*

The parties agree that the guideline sentence is the minimum term of imprisonment, 84 months. *See* USSG §2K2.4(b).

c. *Count 3 – Felon In Possession of Firearms*

    i. Base Offense Level and Relevant Conduct:

The parties agree that the base offense level is 14. *See* USSG §2K2.1(a)(6).

    ii. Specific Offense Characteristics:

The United States and Defendant agree to a 2-level increase as the offense involved 3 firearms. *See* USSG §2K2.1(b)(1)(A). The United States and Defendant agree to a 2-level increase as one of the firearms was stolen. *See* USSG

---

[1] The parties recognize that USSG §2B3.1(b)(2)(B) calls for 6-level increase when a firearm was used to convey a specific threat of harm, and it should generally apply to this fact pattern. However, the parties recognize that this increase may not apply due to sentence imposed on Count 2. *See* USSG §2K2.4 comment (4). Each party retains the right to argue this enhancement as the party sees it.

PLEA AGREEMENT - 10

§2K2.1(b)(4)(A). The United States and Defendant agree to a 4-level increase as the firearms used in connection with another felony offense. *See* USSG §2K2.1(b)(6)(B).

### iii. Role Adjustments:

The United States and Defendant agree to recommend no role adjustment applies. *See* USSG §§3B1.1; 3B1.2.

### d. *Grouping*

The parties agree that the offenses are properly grouped, therefore the higher offense level calculation applies pursuant to USSG §3D1.3(a).

### e. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

### f. *Agreements Regarding Representations to the Court*

PLEA AGREEMENT - 11

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v.    The United States and Defendant may each respond to any arguments presented by the other;

PLEA AGREEMENT - 12

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

PLEA AGREEMENT - 13

ix.    . Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

g. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

h.    *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

10.    Incarceration:

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea

PLEA AGREEMENT - 14

Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend a total sentence of 180 months (96 months on Counts 1 and 5, to be followed by 84 months on Count 2). Defendant retains the right to recommend a total sentence of 161 months.

11.    Supervised Release

The United States and Defendant each agree to recommend 5 years of supervised release as to Count 2. Defendant agrees that the Court's decision regarding the term or conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c.    Defendant shall complete a mental health evaluation and follow any treatment recommendations of the evaluating professional that do not require forced or psychotropic medication and/or inpatient confinement, absent further order of the Court.

PLEA AGREEMENT - 15

Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12. Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish to the United States all right, title and interest in all assets listed herein, and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets, including, but not limited to the following:

- a Ruger, SR1911, .45 caliber handgun, bearing serial number 673-95042 and loaded six (6) rounds of assorted .45 caliber ammunition;

- a Hi-Point Firearms, Model C9, 9mm handgun, bearing serial number P1891188;

- two magazines loaded with a total of 19 rounds of CCI 9mm ammunition; and,

- a Smith and Wesson, .38 special revolver, bearing serial number BMA2649, and loaded five (5) rounds of assorted .38 caliber ammunition.

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), as

PLEA AGREEMENT - 16

property used or intended to be used in any manner or part to commit or to facilitate the commission of the offense to which Defendant is pleading guilty.

Defendant agrees to take all steps requested by the United States to pass clear title to these assets to the United States, and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold harmless all law enforcement agents/officers, and the United States, its agents, and its employees from any claims whatsoever arising in connection with the seizure and/or forfeiture of the assets listed above.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets that Defendant is agreeing to forfeit in this Plea Agreement. Defendant waives all constitutional, equitable and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of these assets. Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to forfeiture.

14.    Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment as to Counts 1, 2, and 5 ($300 total) to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15.    Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for

PLEA AGREEMENT - 17

the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.    *Restitution Amount and Interest*

The United States and Defendant stipulate and agree that the Court should order restitution in an amount of $5,000.00 and that interest on this restitution amount, if any, should be waived.

b.    *Payments*

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.    *Treasury Offset Program and Collection*

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

PLEA AGREEMENT - 18

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

        d.    *Obligations, Authorizations, and Notifications*

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a

PLEA AGREEMENT - 19

reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

16. Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to

PLEA AGREEMENT - 20

appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

PLEA AGREEMENT - 21

19.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.    this Plea Agreement shall become null and void;

b.    the United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant,

PLEA AGREEMENT - 22

and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Deputy Attorney General of the United States

_____        2/24/2024
Brandon Pang                            Date
Assistant United States Attorney

//

//

//

//

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained

PLEA AGREEMENT - 23

in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____        2-24-26
Hector David Flores                      Date
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____        2/24/26
Nick Mirr                                Date
Attorneys for Defendant

PLEA AGREEMENT - 24